[Civ. No. 1079.   Second Appellate District.—March 26, 1912.]

## MARY LOUISE CARLE, Appellant, v. LOUISE HELLER, LOUIS CHARLES HELLER, and CHARLES C. HELLER, Respondents.

HUSBAND AND WIFE—PURCHASE BY HUSBAND OF LAND IN WIFE'S NAME —PRESUMPTION OF GIFT—CODE PRESUMPTION OF SEPARATE PROPERTY—BURDEN OF PROOF.—Where land in this state is purchased by the husband in the name of the wife, either with his separate funds or with community funds, the presumption arises that a gift of such land to the wife was intended; and under section 164 of the Civil Code, the presumption is that the title is thereby vested in the wife as her separate property. The burden to overcome such presumption rests upon anyone interested in attacking the wife's title to produce competent evidence of sufficient weight to show that the husband did not intend such property as a gift to his wife.

ID.—ABSENCE OF EVIDENCE OVERCOMING TITLE OF WIFE—SALES AND DISPOSITION OF WIFE'S ESTATE PRESUMED SEPARATE.—In the absence of evidence sufficient to overcome the title of the wife in the property originally acquired by her from her husband's funds, as her presumed separate estate, and in the absence of any further showing of the loss of such title, the presumption is that the proceeds of the sale of his original separate estate continued as her separate estate.

ID.—PROCEEDS OF SALES OF SEPARATE PROPERTIES OF HUSBAND AND OF WIFE—ALTERNATIVE MODE OF DEPOSIT IN BANK—GIFT BY WIFE NOT PRESUMED.—Where a contemporaneous sale was made of the wife's separate property, and of a lot belonging to the husband, and the proceeds of the sale of each was known, the mere fact that all of the proceeds were deposited alternatively in the names of the husband "or" wife did not of itself constitute evidence tending to disprove the presumption that the husband gave to the wife the property from the sale of which her part of such proceeds was derived; neither does such fact, standing alone, show that the wife intended to give to the husband any part of her interest in the land.

18 Cal. App.—37

ID.—MORTGAGE BY HUSBAND AND WIFE ON HER SEPARATE ESTATE—
PRESUMED WANT OF HUSBAND'S INTEREST — PAYMENT OUT OF
WIFE'S ESTATE.—Money borrowed on the faith of the wife's sep-
arate estate is her separate estate in the absence of a showing
to the contrary. The mere fact that the husband joined with the
wife in a mortgage loan on her separate estate, at a time when
he owned no property, does not indicate that he owned any interest
in the mortgage on the property, especially where it appears that
such mortgage loan was paid mostly out of the rents and profits
of the wife's separate estate, which were her separate property, and
that the small residue was paid out of the proceeds of the sale of
her separate estate.

ID.—COMMINGLING OF FUNDS—SEPARATE INTERESTS CLEARLY ASCER-
TAINABLE—PARTIAL TRANSMUTATION SHOWN.—The mere comming-
ling of the funds on deposit belonging to the husband and wife
does not render the interest of each party not clearly ascertain-
able. Where it appears that by investment a part of the proceeds
of the wife's separate estate became vested in the husband, and
the residue remained in the wife, she is entitled to the whole
residue remaining in her as her separate estate, and no part thereof
can be claimed by the heirs of the deceased husband.

APPEAL from a judgment of the Superior Court of Los
Angeles County, and from an order denying a new trial. W.
P. James, Judge.

The facts are stated in the opinion of the court.

Constan Jensen, for Appellant.

Gibson, Trask, Dunn & Crutcher, and Edward E. Bacon, for
Respondents.

SHAW, J.—One Charles Heller died intestate, leaving sur-
viving him a daughter, the plaintiff herein, and a widow and
two sons, the defendants. The widow was appointed admin-
istratrix of his estate and the same, as inventoried, was in
due course settled and distributed in accordance with the
orders of court. Thereafter plaintiff filed this complaint,
alleging that her mother, as such administratrix, had neg-
lected and failed to account for certain property owned by
deceased at the time of his death. This property, all of which
defendant Louise Heller claims as her separate estate, con-
sisted of $12,000 cash in bank, household furniture of the al-
leged value of $1,000, and an undivided one-half interest in

certain real estate designated as the "West Sixth street property," in all of which plaintiff claimed an interest as the daughter of the deceased. The court found that all of the property involved was the separate estate of defendant Louise Heller and gave judgment accordingly. Plaintiff appeals from this judgment, and from an order denying her motion for a new trial.

While the record discloses upward of fifty specifications of error based upon insufficiency of evidence, the only one necessary to consider in deciding the question involved is the finding that the property described in the complaint did not belong to the estate of Charles Heller, deceased, but was the separate estate of defendant Louise Heller. If this finding is supported by the evidence, other specifications of error based upon like want of evidence, and which are not discussed by appellant, are rendered harmless.

The evidence tends to establish the following facts: Charles Heller and Louise Heller were married in France in the year 1870, emigrating therefrom to Ohio, from which state they removed to California in 1896, bringing with them $6,000, the proceeds of the sale of real estate purchased in the name of the wife, out of the joint earnings of husband and wife. At the time of their removal certain Ohio real estate standing in the name of Louise Heller was by her deeded to plaintiff, then married and living in Ohio. The $6,000 brought with them to California was deposited in bank to the credit of Louise Heller. A piece of property located on San Julian street, in the city of Los Angeles, and consisting of a lot upon which there were two storerooms, over which were rooms used as a lodging-house, was purchased for $8,500, the title thereto being placed in the name of defendant Louise Heller, who paid thereon the $6,000 which she had in bank, and she and her husband jointly gave their note and mortgage for the balance of the purchase price. This property, it appears, increased rapidly in value. Later, at the request of Charles Heller, the daughter, plaintiff herein, conveyed to him the Ohio property which her mother, Louise Heller, had deeded to her, and which property Charles Heller conveyed to his wife. Louise Heller sold this property for $1,200, which sum she gave to Charles Heller with which to purchase, in his own name, a small piece of property in the rear of the lodging-

house on San Julian street. The reason she assigns for this act was an expressed wish on the part of Charles Heller to own the property in order to qualify himself for jury service, election officer, etc. The purchase price of this property was $1,700, and the balance thereof over and above the $1,200 was secured by mortgage thereon. Mrs. Heller conducted the lodging-house in the San Julian street property for seven or eight years, the proceeds and rents derived therefrom being applied in reduction of the mortgage of $2,500 originally given to secure a part of the purchase price. On October 24, 1904, the San Julian street property, title to which stood in the name of Louise Heller, together with the small lot in the rear, the title to which stood in the name of the husband, was sold for the sum of $26,000, $18,000 of which was cash, and the balance evidenced by note and mortgage executed to Charles and Louise Heller. This money, less $500 required to pay the mortgage on the husband's lot, and a small sum still unpaid against the wife's lot, was, on the date of the sale, deposited in bank to the credit of "Charles Heller or Louise Heller." Of this sum, $13,000 was used in the purchase of the West Sixth street property, title to which was taken in the joint name of Charles Heller and Louise Heller. As administratrix, Louise Heller recognized the estate of deceased as the owner of an undivided one-half interest in this property, and the other interest therein, standing in her name, is the real estate involved in this controversy, and which plaintiff insists is not the estate of the mother, but, together with the $12,000, being the balance of the proceeds of the sale of the San Julian street property and lot in the rear thereof, constituted a part of the estate of Charles Heller.

Counsel for appellant devotes much of his argument in support of the proposition that the property accumulated by the Hellers in Ohio was, under the laws of that state, the separate property of the husband. In so far as the decision of this case is affected by the question, such fact may be conceded. Section 164, Civil Code, provides that, "whenever any property is conveyed to a married woman by an instrument in writing, the presumption is that the title is thereby vested in her as her separate property." This presumption is indulged in whether the purchase money be the separate funds of the husband, or funds belonging to the marital relation. Funds

of either character are equally the subject of a gift from husband to wife. The property having been conveyed to the wife, the law regards it as her separate estate. No duty devolved upon Louise Heller to prove that it was the subject of a gift, for, since, under the provisions of said section, it is presumed to be her property, "the law, in the absence of evidence to the contrary, presumes the existence of any fact showing the property to have been acquired by her in such manner as to constitute it separate property." (*Killian* v. *Killian*, 10 Cal. App. 312, [101 Pac. 806]. See, also, *Alferitz* v. *Arrivillaga*, 143 Cal. 646, [77 Pac. 657]; *Fanning* v. *Green*, 156 Cal. 279, [104 Pac. 308].) As the purchase money paid for the property was the separate funds of Charles Heller, and a gift thereof being essential to the theory that it was the separate estate of Louise Heller, the law presumes a gift thereof from the husband to the wife. The burden of overcoming such presumption devolved upon plaintiff in attacking the mother's title, and in order to divest the latter's title, plaintiff was required to produce competent evidence of sufficient weight to overcome the presumption that her father intended the property as a gift to his wife, Louise Heller, defendant herein. Little or no evidence was adduced at the trial, the tendency of which was to controvert the rights of Louise Heller in the San Julian street property; and if she owned the property, it necessarily follows, in the absence of some act transmuting the same, that the proceeds of the sale thereof continued as her separate estate.

The mere fact of depositing the proceeds of a subsequent sale of the property in bank to the account of "Charles Heller or Louise Heller" in itself constituted no evidence tending to disprove the presumption that the husband gave to the wife the property from the sale of which such proceeds were derived. Neither does such fact, standing alone, show that the wife intended to give to the husband any part of her interest in such fund. (*Denigan* v. *Hibernia etc. Society*, 127 Cal. 137, [59 Pac. 389]; *Freese* v. *Hibernia etc. Society*, 139 Cal. 392, [73 Pac. 172].) Concededly, the husband owned a part of the deposit derived from the sale of his own lot, and as to which sum he was entitled to have it paid out on his order. The record discloses no act of either husband or wife with reference to this deposit which tends to prove that the wife

intended to give the husband her separate funds in the deposit; on the contrary, the conduct of both husband and wife in dealing with the fund so deposited was consistent with a purpose other than so to do. "It should not be held that she intended to part with her title thereto by reason of an ambiguous phrase which is quite consistent with a contrary purpose." (See *Denigan* v. *Hibernia etc. Society*, 127 Cal. 141, [59 Pac. 389], and cases cited.)

Of the purchase price of the San Julian street property, $2,500 thereof was evidenced by a note and mortgage, in the execution of which Charles Heller joined with his wife. Upon this fact appellant insists that an interest equivalent to the amount of said note and mortgage was community property. This contention is based upon *Loring* v. *Stuart*, 79 Cal. 202, [21 Pac. 651], and *Schuyler* v. *Broughton*, 70 Cal. 285, [11 Pac. 719]. In the latter case it was decided that real property purchased by a married woman in her own name and paid for in part with her separate funds and in part with money borrowed by her for that purpose is in part the separate property of the wife and in part community property. In the case at bar, it appears that the husband at the time of the execution of the mortgage owned, in his own name, no property whatever. The loan was, therefore, made upon the faith of the existing separate estate of the wife. Except a small part thereof paid from the proceeds of the sale, it was paid from the rents, issues and profits of defendant's separate estate which, like the estate itself, was her separate property. (*Diefendorff* v. *Hopkins*, 95 Cal. 343, [28 Pac. 265, 30 Pac. 549]; *Walsh* v. *Walsh*, 84 Cal. 101, [23 Pac. 1099].) Under these circumstances, the case must be deemed controlled by the later authorities of *Flournoy* v. *Flournoy*, 86 Cal. 286, [21 Am. St. Rep. 39, 24 Pac. 1012], and *Heney* v. *Pesoli*, 109 Cal. 53, [41 Pac. 819], where it is said: "It is rational to conclude that money borrowed upon the separate real estate of one of the spouses will, in the absence of any showing to the contrary, be treated as the separate property of the party owning such real estate." Here there is no showing to the contrary. In support of his contention on this point, counsel for appellant cites at great length the opinion of the court of appeal rendered in the *Estate of Pepper*, 8 Cal. App. Dec. 720. It is but fair to counsel to assume that in thus quoting

from this opinion he was unaware of the fact that the case, after the rendition of such decision, was transferred to the supreme court, which, in deciding the case, and upon the strength of section 163, Civil Code, held that the proceeds of a nursery conducted on land which was the separate property of the husband, and which the court of appeal held to be community property, was likewise his separate estate. (*Estate of Pepper,* 158 Cal. 619, [31 L. R. A., N. S., 1092, 112 Pac. 62].)

It is next insisted that the depositing of the proceeds of the sale of the wife's separate estate with the proceeds of the sale of the lot standing in the name of the husband, conceded to have been funds of the marital relation, constituted such a commingling of the same as to render it impossible to trace and segregate the separate property from that of the community. We perceive no difficulty in this regard for the reason that, upon any theory adopted, it is apparent that a part of the proceeds of the sale of the wife's separate estate was, with the wife's consent, transmuted into community property. The price paid for the property owned by the wife was $8,500. It increased in value rapidly, and several years after it was purchased a small lot in the rear thereof was bought by the husband for $1,700, making a total of $10,200 paid for the two pieces of property. Upon no reasonable hypothesis could the husband's share in the $26,000, for which the two pieces were sold, have exceeded the proportion which $1,700 bore to $10,200, or one-sixth of the whole, amounting to $4,333, from which, however, must be deducted the mortgage of $500, leaving a balance of $3,833. Add to this the additional sum of $548, which appellant claims Charles Heller had in this deposit, and we have $4,381 to apply on the West Sixth street property purchased for $13,000, paid out of the fund, the title to an undivided one-half interest in which, representing $6,500, was vested in Charles Heller. It thus appears that at his death the $12,000 deposit left standing in the name of Louise Heller, together with $6,500 paid for her half interest in the West Sixth street property, constituted a sum much less than the amount received from the sale of her property.

Appellant lays much stress upon the case of *Bekins* v. *Dieterle,* 5 Cal. App. 690, [91 Pac. 173], wherein a creditor of Bekins sought to enforce a judgment against property which it was alleged Bekins had conveyed to his wife in fraud

of such creditor. While the facts of that case bear no analogy to the case at bar, this court in its opinion said: "The presumption of a separate estate created in Kate Bekins (the wife) by the conveyance from M. Bekins is overcome by the evidence, which clearly shows the property to have been purchased with community funds." The statement was wholly unnecessary to a decision of the case, the sole question involved being whether or not Bekins had made the conveyance in fraud of creditors. It was therefore purely dictum. Such statement is not the law when applied to the facts in the case at bar, and it has been repeatedly so held. (*Killian* v. *Killian,* 10 Cal. App. 312, [101 Pac. 806]; *Fanning* v. *Green,* 156 Cal. 279, [104 Pac. 308].) With reference to the furniture of the alleged value of $1,000, which it is claimed was owned by Charles Heller at time of his death, no evidence was adduced thereon other than a statement of defendant Louise Heller to the effect that there were a few household pieces which she herself bought for the rooming-house and took with her. What they were, the value thereof, or whether or not they had any value, is not made to appear.

We are unable to perceive any merit in the appeal, and the judgment and order are, therefore, affirmed.

Allen, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 24, 1912.